IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LISA M. GOODWIN,

    Plaintiff,

  v.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

    Defendant.

                                    /

No. C 09-05080 WHA

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### INTRODUCTION

In this *pro se* disability discrimination action, defendant moves for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is **GRANTED**.

### STATEMENT

The essence of this order is that a prima facie showing of a claim for disability discrimination against an employer under the Rehabilitation Act is not made where, as here, plaintiff is totally disabled, and thus not considered to be a qualified individual under the Act.

Plaintiff Lisa Goodwin began working for the United States Postal Service in Newark, California, in April 2000. Ms. Goodwin was initially appointed as a casual worker for a period of six months. After her casual worker appointment expired, Ms. Goodwin was appointed as a Transitional Employee ("TE") in the clerk craft at the Newark Post Office (Sladden Exh. C at 50–51, 57).

1    TE's are temporary employees that are appointed for a period of approximately three
2    hundred and sixty days at which time the appointment expires. "Reappointment [was] not
3    guaranteed" (Morris Decl. ¶ 3). And, "the decision to not reappoint transitional employees . . . is
4    not grievable" (Morris Exh. A at 261). When deciding whether or not to reappoint a TE, the
5    Postal Service considered the employee's performance, attendance record, and the needs of the
6    particular postal branch. During the time of Ms. Goodwin's employment, the Postal Service had
7    a policy of requiring regular attendance of its employees. Specifically, "[t]he functions of a TE in
8    the clerk craft [could] not be performed from home because they require[d] daily sorting of mail
9    to assist with its timely delivery. [Thus], a TE's absence from work [could] negatively impact
10   postal operations." Effective December 31, 2005, "all TE appointments within the clerk craft
11   were abolished pursuant to a collective bargaining agreement between the Postal Service and the
12   American Postal Workers Union (Morris Decl. ¶¶ 3, 4).

13   As a TE, Ms. Goodwin was required to move bins weighing over 100 pounds, lift
14   containers of mail, and sort pieces of mail by hand, having to bend over to retrieve each piece of
15   mail from the bin (Sladden Exh. B at 31–38). She was also required to empty mail from pallets
16   and cages that were taller than five feet by six inches and were full of "tubs of mail" (Sladden
17   Exh. C at 66–67).

18   **1.    MS. GOODWIN'S TARDINESS AND ABSENCE FROM WORK.**

19   Ms. Goodwin's attendance records for the period September 2003 through January 2004
20   show that she routinely began her shift late. In 2003, Ms. Goodwin was "talked to" regarding an
21   absence of three days "around the time of tax season" (Sladden Exh. C at 60–62, 63). Sometime
22   in 2003, Ms. Goodwin's supervisor Julie Bocanegra and Postmaster Pamela Brooks spoke to her
23   about her work performance because she often engaged in conversations with employees instead
24   of working, she did not pay attention to her work, she disappeared from work, and she was
25   romancing a fellow employee (Sladden Exh. D at 38–41).

26   Beginning in February 2004, Ms. Goodwin was out sick and unable to work because she
27   developed vasculitis, which she states affected her vascular system and resulted in the loss of her
28   left and right index fingers and left middle finger (Sladden Exhs. C at 71–72, A at 221, 225, 235,

2

240). In April 2004, Ms. Goodwin's doctor wrote in a medical record, "she is totally disabled from any type of work" (Sladden Exh. C at 96–97). According to a medical record from Kaiser Permanente, Ms. Goodwin was "ill" and "unable to work" at least until November 15, 2004 (Sladden Exh. C at 97).

### 2. MS. GOODWIN'S FIRST INQUIRY INTO REAPPOINTMENT TO A TE POSITION AND FAILURE TO REQUEST A REASONABLE ACCOMMODATION.

In about mid-September 2004, Ms. Goodwin contacted Postmaster Brooks to find out when her TE appointment would end and what procedures she should take to return to work. Postmaster Brooks told Ms. Goodwin she would need to call personnel to determine when her appointment would end and reminded Ms. Goodwin there was a possibility she would not be reappointed because that job was a temporary, not entitlement position. She also informed Ms. Goodwin that in order to return to work she would need to receive medical clearance, as required by the Postal Service's policy (Sladden Exhs. C at 71–72, A at 163, 166, 222; *see* Morris Decl. ¶ 7). Ms. Goodwin failed to ever request a reasonable accommodation (Sladden Exh. F at 3).

### 3. EXPIRATION OF TE POSITION AND DENIAL OF REAPPOINTMENT.

Ms. Goodwin's TE appointment expired on October 11, 2004 (Morris Exh C). Postmaster Brooks was made aware of this when she received Ms. Goodwin's "Terminal Leave Check" dated October 22, 2004 (Sladden Exh. D at 82). In late October 2004, Postmaster Brooks submitted a Complement Action Request ("CAR") to obtain approval to retain the TE position that had been occupied by Ms. Goodwin and to reappoint Ms. Goodwin as a TE (Sladden Exh. A at 142–43, 145). Postmaster Brooks was notified shortly thereafter that both requests were denied. Postmaster Brooks contacted Manager of Postal Office Operations Edward Kimble to inquire about the denials, and Kimble stated he wanted to eliminate one of the TE positions at the Newark Post Office because other post offices in the region needed a TE position (Sladden Exhs. D at 30, A at 147). During his tenure, Kimble had denied reappointment of other TE's who had poor attendance (Sladden Exh. A at 122–23). On December 1, 2004, Postmaster Brooks informed Ms. Goodwin she would not be reappointed to a TE position (Sladden Exh. B at 69).

3

1    Postmaster Brooks submitted a second CAR in January 2005, requesting a TE position.
2    Approval was granted, but the Newark Post Office did not fill the TE position until March 2005,
3    at which time they filled it with a person other than Ms. Goodwin (Brooks Decl. ¶ 4; Sladden
4    Exh. D at 86). The record shows that on some occasion, Postmaster Brooks inquired about Ms.
5    Goodwin's appointment to a TE position and was told that Ms. Goodwin would not be
6    reappointed due to her poor past attendance (Sladden Exh. A at 113–115, 122). The record is
7    unclear as to whether Postmaster Brooks made this inquiry after Ms. Goodwin had been denied
8    appointment the first time or after approval for a TE position for another person was granted in
9    January 2005.

10    On November 3, 2004, after her TE appointment ended, Ms. Goodwin met with
11    Postmaster Brooks to find out if she could be reappointed to a TE position and provided
12    Postmaster Brooks with a medical record stating, "Allow PT to attempt her old position" (Sladden
13    Exhs. A at 226, C at 97–98). "This documentation was not sufficient to meet with Postal Service
14    requirements established in the Employee and Labor Relations Manual" (Brooks Decl. ¶ 3). On
15    November 9, 2004, Ms. Goodwin was seen by Dr. Saba, a Postal Service doctor, and he provided
16    her with documentation that she could return to work, effective November 22, 2004, with certain
17    restrictions, but she could not lift items over 25 pounds and she had to wear non-latex plastic
18    gloves when handling letters (Sladden Exhs. A at 22, B at 93–94).

19    Based on testimony at the EEOC proceedings, Postmaster Brooks and Kimble had not
20    received medical clearance papers for Ms. Goodwin before the decision was made to *not*
21    reappoint her to a TE position and they were also not aware of Ms. Goodwin's actual medical
22    condition (Sladden Exh. A at 117, 119, 145; Brooks Decl. ¶ 2).

23    **4.    APPLICATION FOR PUBLIC BENEFITS.**

24    On or about April 13, 2004, during Ms. Goodwin's absence from work, she submitted an
25    application for disability benefits to the Social Security Administration office. In this application,
26    Ms. Goodwin claimed she "became unable to work because of [her] disabling condition on
27    February 25, 2004 . . . and [is] still disabled." Ms. Goodwin began receiving Supplemental Social
28    Security Income in May 2004, and based on the Social Security Administration's approval of her

4

application, she started receiving Social Security Disability Benefits in March 2005 (Sladden Exh. C at 20, 22, 24). As of December 29, 2010, Ms. Goodwin continued to receive Social Security Disability Benefits (Sladden Exh. C at 20, 24).

### 5. ADMINISTRATIVE COMPLAINT AND APPEALS PROCESS.

Ms. Goodwin filed an EEO complaint alleging disability discrimination on February 2, 2005 (Sladden Exh. E). There was a hearing before an administrative law judge wherein the judge concluded that Ms. Goodwin failed to establish that she was a "qualified individual," entitled to coverage under the Rehabilitation Act, that the agency had articulated a legitimate nondiscriminatory reason — namely, her poor attendance — for not reappointing Ms. Goodwin, that Ms. Goodwin never requested a reasonable accommodation, and that she did not demonstrate pretext. The agency decision was affirmed on appeal (Sladden Exh. F).

Defendant filed a motion for summary judgment on July 7, 2011. Ms. Goodwin failed to timely respond. The Court granted an extension of time and Ms. Goodwin was ordered to file a response by August 11. Ms. Goodwin again failed to respond. On August 16, an order to show cause issued. Ms. Goodwin responded on September 1, explaining her delay and submitting a response brief. The response brief was accepted, defendant was permitted to reply, and a motion hearing was set.

## ANALYSIS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to

1  show there exists a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

### 1. LEGAL STANDARD.

Ms. Goodwin alleges that she was discriminated against on the basis of her disability because she was not provided a reasonable accommodation and she was not reappointed to her TE position (Compl. ¶¶ 4, 5). The Rehabilitation Act of 1973, as amended, 29 U.S.C. 791, is the sole remedy for a Postal Service employee who alleges disability discrimination in connection with their employment.

In her opposition brief, Ms. Goodwin offers no evidence of direct discrimination. She only asserts that she can "establish a prima facie case of disability discrimination . . . through (Exh. A-excerpts from EEOC hearing transcript)" (Opp. 3). Her claim rests upon circumstantial evidence. Thus, the test for disparate treatment applies. The Supreme Court has adopted a three-part burden shifting test for claims of disability discrimination, based on a theory of disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That test has been applied to employment discrimination based on disability. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53–54 (2003). *First*, plaintiff has the initial burden under the statute of establishing a prima facie case for discrimination. *Second*, if plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment decision. *Third*, if the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a "pretext" for discrimination. *McDonnell*, 411 U.S. at 802–04.

To make a prima facie showing of disability discrimination under the Rehabilitation Act, a plaintiff must prove: (1) she had a disability; (2) she was a "qualified individual" with a disability; and (3) suffered an adverse employment action because of her disability. *Walton v. United States Marshal Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (indicating the ADA's standards of substantive liability are incorporated into the Rehabilitation Act). An employer is not required to provide reasonable accommodation to a person who is totally disabled from work. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482 (9th Cir. 1996).

6

### 2. **QUALIFIED INDIVIDUAL**.

A "qualified individual" is an individual who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. 1630.2(m). A person who is totally disabled from work is not a qualified individual under the Act. *Kennedy*, 90 F.3d at 1482; *Ott v. Crown Cork & Seal Co.*, No. 96-2158, 1997 WL 231110 at *6–7 (Armstrong, J.) (concluding plaintiff was totally disabled and therefore not a "qualified individual" based on clinical and medical opinions of his treating physicians and plaintiff's statements to the Social Security Administration that he was unable to work because of his disability).

In *Kennedy*, the employee brought an action against her former employer alleging disability discrimination under the ADA based on her discharge after an extended absence due to Chronic Fatigue Syndrome. Kennedy's physician "certified her as disabled from work." Kennedy made "sworn statements on state disability benefit claim forms and Social Security Administration claim forms that she was completely disabled for all work-related purposes." During deposition, however, Kennedy testified that she was able to perform her job. The district court held that Kennedy's "deposition testimony . . . was belied by her detailed and definite sworn statements to the contrary on her disability benefit claim forms . . . [and] *that* together with [her doctor's] opinion, established that Kennedy was totally disabled." On appeal, the court concluded that "her deposition testimony d[id] not present a sufficient disagreement to require submission to a jury." Our court of appeals upheld the district court's grant of summary judgment concluding that the court "did not err in holding there is no genuine issue of a material fact as to Kennedy's total disability." *Kennedy*, 90 F.3d at 1479–82.

### 3. **TOTAL DISABILITY.**

Defendant asserts that Ms. Goodwin cannot carry her burden of establishing a prima facie case because she cannot establish that she was a "qualified individual with a disability" under the Rehabilitation Act because she was totally disabled from any kind of work from February 25, 2004 through at least November 15, 2004 (Br. 12–13). Ms. Goodwin argues in her opposition

7

brief that she was not totally disabled during that time period and provides a letter from her doctor dated September 28, 2005, as evidence in support (Opp. 3). Ms. Goodwin also appends as exhibits four notarized letters, three from co-workers and one from her mother. The Court has reviewed the letters and finds no evidence relevant to the total disability inquiry.

Ms. Goodwin requested reappointment to the TE position in mid-September of 2004. At that time she was still employed by the Postal Service. Her TE appointment expired on October 11. Postmaster Brooks notified Ms. Goodwin on December 1 that she would not be reappointed. Ms. Goodwin requested appointment to a TE position, again, on November 3, 2004, but at that time she was no longer a TE. Ms. Goodwin never requested a reasonable accommodation.

Ms. Goodwin made representations in an application to the Social Security Administration dated April 13, 2004, that she was "unable to work because of [her] disabling condition on February 25, 2004. I am still disabled" (Sladden Exh. C at 20, 24). The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). Section 423(d)(2)(A) states the impairment must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Ms. Goodwin's application dated April 13 was approved. She started receiving public benefits in May 2004 and has continued to receive them, at least through December 29, 2010 (Sladden Exh. C at 20, 24). By Ms. Goodwin's own admission she was disabled from February 25 to the end of her TE term in October 2004. After reaping public benefits based on a claim that she was disabled and unable to work, Ms. Goodwin cannot now claim the opposite. Such a self-serving statement cannot defeat summary judgment.

Further, Ms. Goodwin's own physicians determined she was totally disabled for the relevant period. On April 12, 2004, Ms. Goodwin's physician declared her "totally disabled" from any type of work. And Ms. Goodwin's own medical record from September 22, 2004,

8

1 shows that she indicated to her doctor that she did not believe she could return to work because
2 she "[f]eels she couldn't do her work" (Sladden Supp. Exh. A).

3 It was not until November 15, 2004, that her physician provided her with clearance to
4 "attempt" to return to work (Sladden Exh. C at 96–98). Also, with caution, Dr. Saba, a Postal
5 Service physician, provided Ms. Goodwin clearance to return to work on November 22, but with
6 significant restrictions (Sladden Exh. B at 93–94).

7 Ms. Goodwin argues in her opposition that she could have returned to work before her
8 appointment expired and cites to a letter from her doctor dated September 28, 2005, indicating
9 she could return to work (Opp. 3; Exh. A). The letter is not a sworn statement, has not been
10 authenticated, and is thus inadmissable hearsay. FRE 802. But even if it was admissible, it could
11 only be construed to show that from the date of the letter, Ms. Goodwin was no longer "precluded
12 . . . from all types of work" (Goodwin Exh. A).

13 Ms. Goodwin's self-serving argument in her opposition is contradicted by her medical
14 records, her own statements therein, and her statements to the Social Security Administration
15 office. Together, this evidence demonstrates that because Ms. Goodwin was totally disabled, she
16 was not a qualified individual under the Rehabilitation Act from at least February 25, 2004
17 through November 15, 2004, over a month after the expiration of her TE position. Persons who
18 are totally disabled are simply not qualified individuals under the Act.

19 Defendant has shown that Ms. Goodwin is unable to prove a prima facie case of disability
20 discrimination because she fails to prove she was a qualified individual under the Rehabilitation
21 Act when she was denied appointment to a TE position. Because Ms. Goodwin has failed to
22 establish a prima facie case of disability discrimination at the first step of the discrimination
23 analysis, this order need not consider defendant's arguments concerning the second and third
24 steps of the analysis.

9

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is **GRANTED**. Judgment will be entered in favor of defendant.

**IT IS SO ORDERED.**

Dated: October 19, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE